AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black Samsung Smart Phone<br>Seized as FP&F No. 2023565300046802 Line Item 0001<br>("Target Device 3") | )<br>)<br>)<br>)<br>)<br>)    Case No. **23-MJ-01219** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | *Offense Description* |
|---|---|
| Title 8, U. S. C. § 1324 | Alien Smuggling |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Shawna M. Wilson, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Shawna M. Wilson, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*

Date: _____ 04/04/2023 _____

_____
*Judge's signature*

City and state: San Diego, California    HON. Daniel E. Butcher, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Shawna M. Wilson, being duly sworn, hereby state as follows:

## INTRODUCTION

1.     I submit this affidavit in support of an application for a warrant to search the following electronic devices:

Gold Apple iPhone Pro Max
Seized as FP&F No. 2023565300046801 Item 0003
(**"Target Device 1"**)

Gold Apple iPhone Pro
Seized as FP&F No. 2023565300046801 Item 0004
(**"Target Device 2"**)

Black Samsung Smart Phone
Seized as FP&F No. 2023565300046802 Item 0001
(**"Target Device 3"**)

the **Target Devices**, as further described in Attachment A-1, A-2, and A-3 and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.     The requested warrants related to the investigation and prosecution of Bernardo TERRAZAS-Garcia for attempting to transport and move illegal aliens within the United States. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3.     The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents.  This affidavit is intended to show that there is sufficient

1

probable cause for the requested warrants and does not purport to set forth all of my knowledge of the investigation into this matter.   Dates and times are approximate.

## TRAINING AND EXPERIENCE

4.     I have been employed by the USBP since 2019 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for four years.  I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants.  I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5.     My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6.     During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational

habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media,

1   or messaging applications when contact is lost with the driver after an apprehension has
2   occurred.

9.     Based upon my training, experience, and consultations with law enforcement
3   officers experienced in narcotics trafficking investigations, and all the facts and opinions
4   set forth in this affidavit, I know that cellular telephones (including their Subscriber
5   Identity Module (SIM) card(s)) can and often do contain electronic evidence, including,
    for example, phone logs and contacts, voice and text communications, and data, such as
6   emails, text messages, chats and chat logs from various third-party applications,
7   photographs, audio files, videos, and location data.  In particular, in my experience and
8   consultation with law enforcement officers experienced in alien smuggling investigations,
    I am aware that individuals engaged in alien smuggling may store photos and videos on
9   their cell phones that reflect or show co-conspirators and associates engaged in alien
10  smuggling, as well as images and videos with geo-location data identifying alien smuggling
    transportation routes, and communications to and from recruiters and organizers.
11
    10.    This information can be stored within disks, memory cards, deleted data,
12  remnant data, slack space, and temporary or permanent files contained on or in the cellular
13  telephone. Specifically, searches of cellular telephones may yield evidence:

14
           a. tending to indicate efforts to smuggle aliens from Mexico into the United
15            States, and transport aliens inside the United States;

16         b. tending to identify accounts, facilities, storage devices, and/or services–
              such as email addresses, IP addresses, and phone numbers–used to
17            facilitate alien smuggling and transportation of smuggled aliens;

18         c. tending to identify co-conspirators, criminal associates, or others involved
              in alien smuggling, or transportation of smuggled aliens;

19
           d. tending to identify travel to or presence at locations involved in the
20            smuggling, transportation, or harboring of illegal aliens, such as stash
              houses, load houses, or delivery points;

21

4

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11.     On March 31, 2023, Border Patrol Agent J. Stirk was conducting assigned duties in the Brown Field Border Patrol Station's area of responsibility. At approximately 4:33 PM, agents in the field were notified of a gray BMW that was the area that had been previously used for alien smuggling. Agent Stirk observed a vehicle matching the description traveling east on State Route 94 (SR-94) passing the SR-94 Border Patrol Immigration Checkpoint. Approximately one quarter mile later, Agent Stirk observed the BMW make a U-turn and begin to travel west on SR-94. The BMW then turned north onto Honey Springs Road, Agent Stirk didn't follow it, and requested air support from Air and Marine Operations. Air support responded, and notified Agent Stirk that the BMW was now traveling south on Deerhorn Valley Road, which is a dead-end road in a remote area. At approximately 4:58 PM, Agent Stirk was notified that the BMW was now turning back onto Honey Springs Road. The BMW then passed Agent Stirk's location, where he observed a Hispanic male with a black baseball cap driving. As Agent Stirk positioned his vehicle behind the BMW, it accelerated to create distance.

12.     Agent Stirk then initiated his lights and sirens and attempted to conduct a vehicle stop. The BMW failed to yield and accelerated to approximately 80 miles per hour. Border Patrol Agent W. Swedberg was positioned at the SR-94 and Honey Springs Road intersection with a Vehicle Immobilization Device (VID).  As the BMW passed Agent Swedberg, he successfully deployed his VID. The BMW didn't stop and kept driving on Otay Lakes Road. Supervisory Border Patrol Agent C. Wagner began following the BMW, and observed the left rear tire began to emanate smoke and ultimately shredded off the rim. The BMW kept driving and passed civilian vehicles across double yellow lines. At

approximately 5:12 PM, the BMW lost control and skidded of the road onto the dirt shoulder. Before it came to a complete stop, Agent Wagner observed the driver climb into the back seat of the BMW.  At this time, Agent Wagner used his government vehicle to stop the forward motion of the BMW, as it was drifting back onto the road and into oncoming traffic. This area is approximately seven miles east of the Otay Mesa, California Port of Entry and approximately six miles north of the United States/Mexico International Boundary.

13.    As Agent Stirk approached the BMW, he observed several individuals in the back seat, but no one in the driver or front passenger seat. Agent Stirk then recognized the male sitting on the rear passenger side, later identified as the defendant, Bernardo TERRAZAS-Garcia, as the individual he observed earlier driving the BMW. Agent Stirk also noticed that two of the individuals, later identified as material witnesses, Juana CASTILLO-Jimenez and Erick Isais VICENTE-Lechuga, were extremely dirty and cover with brush, while TERRAZAS and another female were clean. TERRAZAS had clean bright white tennis shoes on. Agent Stirk identified himself as a Border Patrol Agent and conducted an immigration inspection. TERRAZAS, CASTILLO and VICENTE stated that they are citizens of Mexico, the other individual stated that she was a citizen of Nicaragua, without any immigration documents allowing them to enter or remain in the United Sates legally. At approximately 5:14 PM, Agent Stirk placed all four individuals, including TERRAZAS, CASTILLO and VICENTE, under arrest.

14.    At the time of arrest, a gold Apple iPhone Pro Max (**Target Device 1**), a gold Apple iPhone Pro (**Target Device 2**), and a black Samsung Smart Phone **(Target Device 3)** were found hidden under the back seat cushion of the BMW. All three of these devices were subsequently seized. TERRAZAS claimed that (**Target Devices 1**) and **(Target Device 2)** were his phones and another female in the BMW, Lucelia Rachell NAVAS-Aguirre claimed that **(Target Device 3)** was her phone.

15.     Material witnesses CASTILLO and VICENTE stated they are citizens of Mexico without any immigration documents allowing them to enter or remain in the United States legally.  CASTILLO and VICENTE stated that they made smuggling arrangements and were going to pay between $7,000-$12,000 USD to be successfully smuggled into the United States.  CASTILLO stated a small vehicle arrived at their location to pick them up and screamed "vengan," which is "come" in English. CARILLO stated that they knew they were being followed by a helicopter. VICENTE stated that a gray four door sedan arrived to pick them up.  VICENTE stated that after getting in the back seat of the vehicle, the driver asked if everyone was ready. VICENTE described the driver as a light skinned male with black hair. VICENTE stated that the driver ignored the Border Patrol Agents following them and kept driving.

16.     Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using the **Target Devices** to communicate with others to further illegal entry into the United States.  Based on my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim.  Accordingly, I request permission to search the **Target Devices** for data beginning on **March 1, 2023, through March 31, 2023**.

## METHODOLOGY

17.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be

simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18.     Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

19.     Based on the foregoing, identifying, and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

1

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

2     20.    Law enforcement has not previously attempted to obtain the evidence sought by these warrants.

3

## CONCLUSION

4     21.    Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of an alien smuggling violation of Title 8, United States Code, Section 1324.

6     22.    Because the **Target Devices** were seized at the time of HERNANDEZ and RIOS' arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from **March 1, 2023, through March 31, 2023.**

10     23.    Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A-1, A-2, and A-3 seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Shawna M. Wilson
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 4th day of April 2023.

HON. DANIEL E. BUTCHER
United States Magistrate Judge

9

1

## ATTACHMENT A-3

2

PROPERTY TO BE SEARCHED

3  The following property is to be searched:

4  Black Samsung Smart Phone
Seized as FP&F No. 2023565300041802 Item 0001

5  **("Target Device 3")**

6

Target Device is currently in the custody of the Department of Homeland Security,

7  Customs and Border Protection, United States Border Patrol, San Diego Sector.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachment A-1, A-2, and A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below.  The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrants.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **March 1, 2023, through March 31, 2023**:

a.   tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.   tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.   tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.